UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
        v.                      )      CRIMINAL NO. 02-10050-JLT
                                )
CURTIS HOLLOWAY                 )

<u>MEMORANDUM IN AID OF SENTENCING</u>

The defendant Curtis Holloway respectfully submits this memorandum in aid of sentencing.  Mr. Holloway anticipates entering a conditional plea to a charge of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Undersigned counsel requests this court to sentence Mr. Holloway to the time he has served awaiting disposition; this is approximately forty months.  This represents the fairest sentence this court can impose and is appropriate in light of the relevant factors enumerated in 18 U.S.C. §3553 and the advisory sentencing guidelines.

<u>THE DEFENDANT'S PERSONAL BACKGROUND</u>

Curtis Holloway is 24 years old and is a native of Massachusetts.  He is married to Damaris Cintron Holloway and is the stepfather to her two children, Mark, who is 19, and Byron, aged 12.  He also has a young son, Kendall Ciraso.  Mr. Holloway grew up with his mother Minnie Holloway, brother Jamal, and two

1

sisters, Chaka and Taneka.  The family was extremely poor and
their life was terribly hard.  During the first four or five
years of Curtis's life, he and his family lived with Minnie's
mother Mary Holloway on Zeigler St. in Roxbury.  Minnie was
addicted to crack cocaine, and when Curtis was about five years
old, Mary threw Minnie and her children out of her home.  Minnie
took her family[1] to live with Josie Bishop, Curtis's paternal
grandmother.  Minnie stayed with her children in Ms. Bishop's
home for about two years.  She then left and moved to Brockton,
abandoning the children to Ms. Bishop's care.  Josie Bishop tried
to be good to the Holloway children, though she did hit them, as
she believed in physical discipline.  Minnie was gone for about
five years.  She then returned, pregnant with Jamal, the youngest
son.  She gave birth to Jamal and then left again.

In 1993 or thereabouts, she retrieved her children from Ms.
Bishop and moved the family to Brockton.  She was still addicted
to crack, and she neglected the children in order to indulge her
addiction.  She routinely left them alone for hours at a time
while she went out to get high.  She was physically and verbally
abusive to the children when she got home, as she resented having
to care for them and was not up to the task.  The PSR at ¶¶ 56-60
summarizes the poverty, abuse, and neglect suffered by Curtis and

---

[1]   Jamal had not yet been born.

his siblings during their childhood.

Curtis dropped out of school during the ninth grade.  He began getting into trouble with the juvenile authorities when he was 15, and his legal problems have continued from that time.

In 1999, Curtis met Damaris Cintron through a relative. They became romantically involved and have been a couple ever since; they were married on March 15, 2004 at the Plymouth County Jail.  Damaris is a hardworking mother.  She lives in Hyde Park with her son Byron.  She used to work at the Dimock Community Health Center as a lay AIDS/HIV peer counselor.  She currently works at The Home for Little Wanderers as a mentor and caretaker for children.  She is HIV+, and unfortunately her illness is very advanced.  Her CD4 cell count is 80 per cubic mm of blood.  This is an extremely low CD4 cell count; a healthy uninfected woman has a CD4 cell count of between 500 and 1600 cells per mm$^3$.  She has been HIV+ for 14 years, and for most of that time she has taken AZT and the protease inhibitor "cocktail."  However, she began to suffer from side effects of the treatment, which included weakness and fatigue, loss of appetite, and diarrhea. These symptoms became so intolerable that she went off her medications shortly after she and Curtis married.[2]  At the

---

[2]  Damaris Holloway is scheduled to see her doctor, Dr. Beth Zeeman of the Boston Medical Center's Department of Infectious Diseases, in the next month.  Mrs. Holloway has had to take

moment, Mrs. Holloway's health is at a low ebb, and this is difficult for her.  She says that before Curtis was incarcerated on this pending case, he was always extremely helpful to her, especially during the times when she felt ill.[3]  She is understandably very anxious for her husband to finish his imprisonment so that he can rejoin her and Byron.  She needs his help.

### STATUTORY ANALYSIS:
### 18 U.S.C. §924(e) DOES NOT APPLY

The presentence report ("PSR") relies upon three convictions for simple assault and battery, which were prosecuted under M.G.L.c. 265 §13A, to justify an armed career criminal sentencing enhancement under 18 U.S.C. §924(e) on the theory that these offenses were "violent felonies."  The defendant submits that Holloway's convictions for assault and battery cannot be treated as "violent felonies" for purposes of enhancing his sentence. M.G.L.c. 265 §13A defines nongeneric forms of assault and battery because the statute punishes two distinct types of battery, one violent and the other non-violent.  See Commonwealth v. Burke, 390 Mass. 480 (1983); United States v. Damon, 127 F.3d 139 (1st

---

medication "vacations" in the past for periods of months when the side effects of her treatment became unbearable.
[3]  If she were to succumb to her disease, there is no one in her family who could take care of Byron.  Mrs. Holloway acknowledges that this is "something I don't want to think about," but her husband is crucial to her future well-being and that of her son.

4

Cir. 1997)(the Massachusetts state crime of assault and battery under §13A encompasses both violent and non-violent conduct); United States v. Harris, 964 F.2d 1234 (1st Cir. 1992) ("[t]he Massachusetts 'assault and battery' statute covers two separate crimes – one involving actual (or potential) physical harm and the other involving a 'nonconsensual' but unharmful touching); United States v. Bregnard, 951 F.2d 457 (1st Cir. 1991)(same). Thus, Mr. Holloway's assault and battery convictions arose under a nongeneric assault and battery statute, as that term has been defined by the U.S. Supreme Court in Taylor v. United States, 495 U.S. 575 (1990).

In Taylor, the Court held that when a sentencing court was determining whether a prior conviction qualified as an armed career criminal predicate under §924(e), it could "look only to the fact of conviction and the statutory definition of the prior offense." Taylor, 495 U.S. at 602. In cases where the statute of conviction defined a nongeneric crime which might or might not qualify as a 924(e)predicate, Taylor permitted scrutiny of the charging papers and jury instructions to ascertain whether the defendant was actually convicted of a generic predicate offense. Id. Consistent with this categorical approach, Taylor prohibited an inquiry into the particular facts underlying the convictions. Id. at 600. This prohibition against inquiring into the facts

underlying a questioned conviction was strongly reaffirmed by the recent decision in United States v. Shepard, 125 S.Ct. 1254, 2005 U.S. LEXIS 2205 (March 7, 2005).  Shepard, which overruled First Circuit precedent, held that where a defendant was convicted under a nongeneric statute of a possible armed career criminal predicate offense, and where it was not clear from the charging documents or the plea colloquy what type of offense the crime of conviction was, for example because the charging document used boilerplate language, a sentencing court could not resort to other sources of information to determine the crime of conviction, and the conviction could not be treated as a predicate for purposes of §924(e).

## GUIDELINES ANALYSIS

The defendant objects to all of factual allegations in the PSR relating to his assault convictions and states that they must be stricken under the authority of United States v. Shepard, 125 S.Ct. 1254 (2005).[4]  Moreover, these factual allegations cannot

---

[4]   The defendant does not admit or acknowledge the facts alleged in these paragraphs.  See Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307 (1999), which holds that a guilty plea does not operate as a waiver of the defendant's right to remain silent with respect to facts affecting sentencing in a federal criminal case:

The concerns which justify the cross-examination when the defendant testifies are absent at a plea colloquy, however.  The purpose of a plea colloquy is to protect the defendant from an unintelligent or involuntary plea.  The Government would turn this constitutional

form the basis for a sentencing enhancement based on prior convictions for crimes of violence under USSG §2K2.1.  United States v. Damon, 127 F.3d 139 (1st Cir. 1997), held that it is error for a sentencing court to consult extra-record materials or otherwise delve into the underlying facts of a prior conviction for the purpose of applying USSG 2K2.1 where the prior conviction was not categorically violent.  In other words, the same categorical analysis used in Taylor and Shepard must be used in applying USSG 2K2.1, and the same limitations apply.[5]

### 18 U.S.C. §3553 AND OTHER RELEVANT SENTENCING FACTORS

18 U.S.C. §3553 directs a sentencing court to consider the characteristics of the defendant as well as the circumstances of the offense; the statute also directs a court to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

In considering Curtis Holloway's history, one cannot help remarking that he did not get anything resembling loving care and

---

shield into a prosecutorial sword by having the defendant relinquish all rights against compelled self-incrimination upon entry of a guilty plea, including the right to remain silent at sentencing.

119 S.Ct. at 1312.

[5]   The defendant further states that he cannot be sentenced as an armed career criminal where he has not been charged as an armed career criminal, Almendarez-Torres v. United States,  523 U.S. 224, 118 S.Ct. 1219 (1998), notwithstanding.

attention from his mother during his childhood.  He and his siblings were often left to fend for themselves and did not have basic necessities, such as food or clothing.  Their mother Minnie was a completely incompetent mother who seems to have been oblivious to the damage her neglect was causing her children. Counsel suggests that the assaultive conduct revealed in Mr. Holloway's criminal history is at least an indirect product of the abuse he witnessed and received as a child and adolescent.

Regarding Mr. Holloway's record, counsel submits that if this were a case controlled by mandatory guidelines, one could argue that Mr. Holloway's criminal history score greatly overstates the seriousness of his record.  Three of his criminal history points arise from episodes of juvenile delinquency when he was 15 years old.  Another three of his adult criminal history points arise from motor vehicle-related offense, including operation without a license.  USSG §4A1.3 authorizes downward departures where the criminal history classification "significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." USSG §4A1.3.  In United States v. Lindia, 82 F.3d 1154, 1165 (1st Cir. 1996), the court held "that a sentencing court may invoke § 4A1.3 to depart downward from the career-offender category if it concludes that the category

8

inaccurately reflects the defendant's actual criminal history, within the meaning of 18 U.S.C. § 3553(b)."

The factors in this case that would warrant a downward departure pursuant to §4A1.3 include: 1) the fact that Curtis Holloway was only 15 years old when a number of his past offenses were committed; see United States v. Shoupe, 988 F.2d 440, 447 (3d Cir. 1993) (fact that defendant was 18 when he committed two of three predicates one of factors warranting departure); and 2) the relatively minor nature of a number of his prior convictions; see United States v. Adkins, 937 F.2d 947, 952 (4th Cir. 1991) (predicate convictions for career offender classification cover "an enormous variety of crimes" and present "a potential for wide discrepancy in the gravity of past antisocial conduct").

Counsel also urges this court to consider the impact of any sentence on Mr. Holloway's wife and stepson.  Damaris Holloway is seriously ill and needs her husband's help.  There is no one else for her to turn to for help with raising her son Byron.  Should her HIV kill her, Byron would be left an orphan if Mr. Holloway were incarcerated at that point.

CONCLUSION

Undersigned counsel urges this Court to sentence Mr. Holloway to the time he has already served.  Mr. Holloway is not eligible for sentencing as an armed career criminal under 18 U.S.C. §924(e).  According to counsel's calculations of the applicable sentencing guidelines, see Objections to the PSR dated April 12, 2005, Mr. Holloway has already served more time than the guidelines would call for if they were controlling.

Respectfully submitted,

By His Attorney

Syrie D. Fried
/s/ Syrie D. Fried
  B.B.O. # 555815
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061